IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PHILIP D. MILAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:03cv456-SRW |
| | ) | WO |
| JO ANNE B. BARNHART, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Phillip D. Milam appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Milam's application for a period of disability and disability insurance benefits. For the reasons set forth below, the Commissioner's decision is due to be affirmed.

**I.    PROCEDURAL HISTORY**

On March 6, 1998, January 12, 1999, and March 9, 2000, Milam filed claims for disability insurance benefits and supplemental security income benefits. On September 13, 2001, and March 8, 2002, an Administrative Law Judge ("ALJ") held hearings on Milam's claims.

On May 8, 2002, the ALJ issued a decision that Milam was not disabled and not entitled to benefits. R. 12-30. The Appeals Council denied review on February 28, 2003. R. 6-7. Plaintiff filed this action on April 29, 2003.

## II. THE PARTIES' POSITIONS

Milam assigns two errors to the Commissioner. First, plaintiff claims that the Commissioner erred by according more weight to the opinions of non-examining physicians than to those of examining physicians. Second, he contends that the Commissioner erred by using plaintiff's ability to work in the past to support his finding that plaintiff currently has the ability to work.

The Commissioner argues that the ALJ properly evaluated the opinions of all of the consultative and non-examining physicians, and properly determined that plaintiff's impairments did not meet or equal a listed impairment (that is, 20 C.F.R. pt. 404, subpt. P, app. 1, Listing §12.05 (mental retardation)).

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985

F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## IV.    ANALYSIS

A. Non-Examining Physicians

Milam contends that the ALJ erred in giving more weight to the testimony of Dr. Nancy Sack, a non-examining physician, than to the opinion of Dr. Judith Rogers, an examining physician, in determining that plaintiff's impairments did not meet the requirements of medical listing 12.05 (mental retardation). Specifically, Milam argues that Dr. Sack "discard[ed] the opinion of an examining psychologist," and – to make matters worse – based her opinion in part on that of another non-examining physician, Dr. Blandon. Plaintiff's Memorandum of Law at 10.[1] This claim is without merit.

The ALJ considered and discussed the opinions of three mental health professionals in arriving at his decision. First, he reviewed the results of Dr. Jean M. Badry's consultative evaluations of Milam on April 22, 1998 and July 1, 2000. R. 17. The ALJ noted that, in the 1998 evaluation, plaintiff achieved a verbal IQ score of 71, a performance IQ score of 73, and a full IQ score of 69 on the Wechsler Adult Intelligence Scale-III. Id. The ALJ indicated that Dr. Badry found that Milam "did not have any thought or cognitive

---

[1] See, e.g., Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir.1988) ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.").

abnormalities, especially in the areas of drug and alcohol use as well as legal problems. His affect was appropriate and his mood appeared normal. The claimant's motivation and persistence were good. His attention span and listening skills were adequate." Id. The ALJ also noted Dr. Badry's impression that Milam suffered from borderline intellectual functioning and antisocial personality disorder. Id.

The ALJ then discussed Dr. Badry's second consultative evaluation, in which Badry found "no hint of impaired memory," "no thought or cognitive abnormalities," good motivation and persistence, and adequate attention span and listening skills. Id. The ALJ noted Badry's findings that Milam "performed much better than would be anticipated when compared to his prior (1998) IQ testing which may indicate a prior under-estimation of his actual IQ," and that Milam "appeared to be more intelligent than the testing showed in 1998." Id. He indicated that "Dr. Badry's impression was MALINGERING, and antisocial personality disorder." Id.

The ALJ also discussed the results of Dr. Judith Rogers' consultative psychological evaluation on October 8, 2001. Id. at 18. The ALJ summarized Rogers' findings as follows:

> Dr. Judith Rogers performed a consultative psychological evaluation on October 8, 2001. The claimant arrived punctually. He did not appear to be especially neat or well groomed. He went on at length about various things that had happened to him and blamed all his problems on others. Throughout the interview, the claimant threw in memories of every ailment he has ever had. He presented these in a jumbled fashion and it was difficult to get a sense of chronological order. *Probably this was in large part because he wanted to convince the examiner of his ailments in order to get Social Security disability benefits.* Dr. Rogers had the impression the he tended to focus on various illnesses and ailments and to view himself as totally disabled because of these far fetched complaints. On the Wechsler Adult Intelligence Scale – Third

4

> Edition, the claimant attained a Verbal IQ of 71, a Performance IQ of 72, and a Full Scale IQ of 69. Dr. Rogers concluded that intellectually, the claimant was somewhere right at the edge between mild mental retardation and borderline intellectual functioning. Dr. Rogers opined that the claimant appeared to make every effort to present himself as suffering from any and every possible physical and psychological ailment. There was obviously an attempt to emphasize and exaggerate symptoms if not to overtly manufacture them. There was evidence to suggest that alcohol and substance abuse may have contributed to many of his problems. Although the claimant and his wife denied any current or recent use of illegal substances or alcohol, Dr. Rogers opined that the claimant's behavior in the office was unusual enough that she would not be surprised to learn that he had been using some sort of substances prior to the interview (Exhibit 18F).

R. 18 (emphasis in original). The ALJ also noted that "Dr. Rogers opined on October 8, 2001, that the claimant would not be competent to manage any benefits for which he might qualify due to his extremely poor judgment and his poor math ability." R. 25.

> Finally, the ALJ discussed Dr. Nancy Sack's findings. As the ALJ explained,

> In consideration of the claimant's limitations, I obtained testimony from a qualified, impartial medical expert, Nancy L. Sack, Ph.D. The expert's responses to specific questions sustained a conclusion that the claimant did not have any impairment or combination of impairments for a period of 12 continuous months which met or medically equaled any Listing level severity impairment found at Appendix 1, Subpart P, Social Security Regulations No. 4, including Medical Listing 12.05C. Dr. Sack testified that the claimant's IQ scores were not supported by his work history or his activities of daily living, which certainly indicates a higher range of adaptive functioning. This opinion is consistent with the opinions of the medical experts who reviewed the evidence, when the initial determination was issued (Exhibit 9F).

R.24.[2]

---

[2] During her testimony, Dr. Sack mentioned that Dr. Blandon had identified the plaintiff as being able to handle social pressure and as being socially average. R. 64. The ALJ did not note this fact in reviewing Dr. Sack's testimony, and does not appear to have specifically relied upon it.

Based on its review of the ALJ's decision and the record as a whole, the court finds that the ALJ did not disregard Dr. Rogers' opinion because it conflicted with that of Dr. Sack (to the limited extent that it did so), but simply because Rogers was unable to arrive at a diagnosis for Milam. As the ALJ explained:

> I give little weight to Rogers' opinion. In fact, I reject the entire consultative evaluation based on a review of the record as a whole. In this regard, Dr. Rogers specifically noted at the end of her report that it was very difficult to arrive at any firm diagnostic conclusion, based on testing and interviews with the claimant and his wife. From the beginning, the claimant had presented contradictory information, tended to exaggerate symptoms, and was medically unsophisticated. Moreover, there were suggestions of continued substance abuse [].

R. 25. This conclusion is supported by substantial evidence. Dr. Rogers' report reflects, *inter alia*, that

> [t]hroughout the interview Mr. Milam threw in his memories of every ailment he has ever had. He presented these in a jumbled fashion and it was difficult to get a sense of chronological order. Probably this was in large part because he wanted to convince me of his ailments in order to get Social Security Disability benefits. I had the impression that he tends to focus on various illnesses and ailments and to view himself as totally disabled because of these far fetched complaints.

R. 421. Further, Dr. Rogers noted that:

> Mr. Milam appeared to make every effort to present himself as suffering from any and every possible physical and psychological ailment. There was obviously an attempt to emphasize and exaggerate symptoms if not to overtly manufacture them.

R. 422. Dr. Rogers suggested that "[i]ntellectually, [Milam] is functioning somewhere right on the edge between Mild Mental Retardation and Borderline Intellectual functioning." Id.

6

However, this was clearly a tentative diagnosis. As Dr. Rogers put it, "[i]t is very difficult to arrive at any firm diagnostic conclusion based on my testing and interviews with this man and his wife and review of records sent by DDS. There are ample records available. Mr. Milam has presented contradictory information, tends to exaggerate symptoms, and is medically unsophisticated. There are some suggestions that there could continue to be some level of substance abuse, although this is denied by claimant." R. 423.[3]

The ALJ did not err as a matter of law in rejecting Dr. Roger's evaluation on the basis that she could not arrive at any firm diagnostic conclusion. "In order to meet a listing, the claimant must (1) have a *diagnosed* condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." Wilkinson on Behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (emphasis added). If a physician "is unsure of the accuracy of his or her findings and statements, there is certainly no legal obligation for the ALJ to defer" to the physician's report. Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991) (Physician candidly conceded that he was not sure that he could objectively assess claimant's condition.); see also Miller v. Apfel, 1999 WL 1320296, *7 (S.D.Ala. 1999)

---

[3] See also R. 421 ("Mr Milam was definitely peculiar. There was something about his behavior which made me wonder whether he was high, either on prescribed or other drugs."); id. ("His behavior today was so peculiar that I continue to have some concern that perhaps he and his wife were using something that made them very talkative."); R. 422 (Although Mr. Milam and his wife deny and current or recent use of illegal substances or alcohol, his behavior in the office today was unusual enough that I would not be surprised to learn that he had been using some sort of substances prior to the interview.').

(unpublished) (Doctor could not diagnose depression due to the invalidity of testing). In this case, the ALJ clearly articulated his reason for giving no weight to the consultative examination of Dr. Rogers, and he had good cause for discounting that evaluation. Plaintiff's claim is without merit.

B.  Plaintiff's Past Work

Plaintiff's second contention is that the "ALJ improperly used plaintiff's past work as the rationale for finding that plaintiff had the adaptive functioning to currently sustain work." Plaintiff's Memorandum of Law at 11. Although plaintiff references "the ALJ's finding that [plaintiff] had the adaptive functioning to currently sustain work because of work that he performed in the past," id., he does not offer any citation to the record in support of this claim. The court has carefully reviewed the ALJ's decision in an attempt to locate such a finding. The only reference of this kind in the ALJ's decision is his comment that "Dr. Sack testified that the claimant's IQ scores were not supported by his work history or his activities of daily living, which certainly indicates a higher range of adaptive functioning." R. 24.

To the extent that the ALJ considered Dr. Sack's testimony to this effect in his analysis, the ALJ did not err. Plaintiff is correct that if he meets a listed impairment, he must be determined to be disabled without consideration of his age, education, and work experience. Ambers v. Heckler, 736 F.2d 1467, 1470 (11th Cir. 1984); see also Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)("[A]n ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid and finds that

8

the claimant meets or equals the criteria of a listed impairment."). However, the ALJ "is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score." Lowery, 979 F.2d at 837. "[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id. (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986)); see also Thomas v. Barnhart, 2004 WL 3366150, *2 (11th Cir. 2004) (unpublished).

In this case, the ALJ did not consider plaintiff's work history *after* determining that his IQ score was valid and finding that he met the criteria of a listed impairment, as prohibited under Ambers and Lowery. Instead, the ALJ noted plaintiff's work history only as evidence that his IQ scores were not supported by his activities, and that plaintiff did not have significant limitations in adaptive functioning as required for a finding of mental retardation under the listings. R. 23-24. This was clearly a proper use of plaintiff's work history, and the ALJ did not err in this regard. See, e.g., Sellers v. Barnhart, 246 F.Supp.2d 1201, 1208 (M.D. Ala. 2002) (considering claimant's work history, which included both unskilled and semi-skilled work, in determining that his I.Q. score was not conclusive of mental retardation where the score was inconsistent with other evidence in the record concerning the claimant's daily activities and behavior.); see also Woodard v. Apfel, 2001 WL 102354, *13 (S.D.Ala.2001) (unpublished) (same); House v. Apfel, 2000 WL 1368012, *8 (S.D.Ala.2000) (unpublished) (same); Randolph v. Apfel, 2000 WL 206637, *5 (S.D.Ala. 2000) (unpublished) (same).

**V.     CONCLUSION**

Thus, for the reasons stated above, the decision of the Commissioner is **AFFIRMED**.

Done, this 23rd day of February, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE